IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
(CENTRAL DIVISION – DES MOINES)

| | |
|---|---|
| HMA, INC., an Iowa Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>JACK STRUYK, LOCKTON COMPANIES, LLC, KATHY FRIDHOLM, JANE DAMBROSIA, CINDY CARLSON, DEB RASMUSSEN, MARLYS GORSETH and PAT GALVIN,<br><br>    Defendants. | **CASE NO. 4:11-cv-00459-JAJ-CMB**<br><br><br>**DEFENDANTS' BRIEF IN SUPPORT OF COMBINED MOTION TO TRANSFER, STAY OR DISMISS THIS ACTION** |

Defendants Jack Struyk, Lockton Companies, LLC, Kathy Fridholm, Jane Dambrosia, Cindy Carlson, Deb Rasmussen, Marlys Gorseth and Pat Galvin (collectively, the "Defendants") pursuant to 28 U.S.C. § 1404(a) and Federal Rules of Civil Procedure 12(b) and 65 hereby submit the following Brief in Support of Combined Motion to Transfer, Stay or Dismiss this Action.

### TABLE OF CONTENTS

I.    BACKGROUND. ........................................................................................................2

II.   ARGUMENT. ..............................................................................................................3

    A.    The Court Should Transfer the Iowa Action to the United States District Court for the District of Nebraska Pursuant to 28 U.S.C. § 1404(a). ......................................................................................4

    B.    The Court Should Dismiss, Stay or Transfer the Iowa Action Pursuant to the First-Filed Rule. ........................................................12

    C.    The Court Should Dismiss the Iowa Action as to Certain Individual Defendants Because the Court Lacks Personal Jurisdiction Over Those Defendants. ...............................................13

III.  CONCLUSION. .........................................................................................................20

## I.   BACKGROUND.

Defendants Jack Struyk ("Struyk"), Kathy Fridholm ("Fridholm"), Jane Dambrosia ("Dambrosia"), Cindy Carlson ("Carlson"), Deb Rasmussen ("Rasmussen"), Marlys Gorseth ("Gorseth") and Pat Galvin ("Galvin") (collectively, the "Individual Defendants") are individuals and residents of Nebraska. (First Amended Petition, ¶¶ 2, 5-10). The Individual Defendants are former employees of Plaintiff HMA, Inc. ("HMA"). (First Amended Petition, ¶¶ 15, 28, 41, 54, 67, 80, 92). The Individual Defendants are now associated with or employed by the Kansas City Series of Lockton Companies, LLC ("Lockton").[1] (First Amended Petition, ¶¶ 23, 36, 49, 62, 75, 87, 100).

The Individual Defendants formerly worked out of HMA's offices in Omaha, Douglas County, Nebraska. (Amended Complaint and Demand for Jury Trial ("Amended Complaint"), attached hereto as Exhibit "A"). The Individual Defendants performed the essential functions of their jobs almost exclusively in Nebraska. (Amended Complaint, ¶ 12). The majority of clients serviced by the Individual Defendants were Nebraska clients. (Amended Complaint, ¶ 12).

On September 7, 2011, Struyk filed a Complaint for Declaratory Judgment and Demand for Jury Trial in the United States District Court for the District of Nebraska (the "Nebraska Action"). (*See* Complaint for Declaratory Judgment and Demand for Jury Trial ("Complaint") attached hereto as Exhibit "B"). Struyk sought a declaration that portions of an October 28, 2003 Employment Agreement (the "Struyk Employment Agreement") he had with HMA were invalid and unenforceable. (Complaint, ¶ 22). Struyk also sought damages, attorneys' fees and costs.

---

[1] HMA named Lockton Companies, LLC as a defendant in this matter. The proper defendant, however, is the Kansas City Series of Lockton Companies, LLC. The Kansas City Series of Lockton Companies, LLC is an Illinois limited liability company with its principal place of business located in Kansas City, Missouri.

(Complaint, ¶ 22).

In response, HMA filed a Petition at law in the Iowa District Court for Polk County seeking damages and other relief based upon Struyk's alleged breach of his Employment Agreement (the "Iowa Action"). (Petition at Law). On September 9, 2011, HMA filed its First Amended Petition in the Iowa Action adding Lockton Companies, LLC ("Lockton") and the remaining Individual Defendants as defendants. (First Amended Petition). The Iowa Action includes the following claims: (1) breach of contract; (2) tortious interference with customers; (3) trade secret violations; and (4) breach of fiduciary duty (as to Struyk). (First Amended Petition).

On September 27, 2011, Lockton and the Individual Defendants filed an Amended Complaint in the Nebraska Action. The Amended Complaint sought a declaration that portions of the Individual Defendants' Employment Agreements were invalid and unenforceable, and also included claims for breach of contract (as to Struyk) and Nebraska Wage Payment & Collection Act claims (as to Struyk). Lockton and the Individual Defendants are seeking declaratory relief, damages, attorneys' fees and costs.

The Defendants removed the present action on September 30, 2011 pursuant to 28 U.S.C. § 1446, based upon diversity of citizenship.

## II.   ARGUMENT.

The Court should transfer, stay or dismiss the Iowa Action. Pursuant to 28 U.S.C. § 1404(a), the Court should transfer the Iowa Action to the United States District Court for the District of Nebraska, based upon the convenience of the parties and witnesses and the interests of justice. In the alternative, the Court should dismiss, stay or transfer the Iowa Action pursuant to Federal Rule of Civil Procedure 65 and the first-filed rule, because the Nebraska Action was

filed before the Iowa Action. Finally, as an additional ground, the Court should dismiss the Iowa Action pursuant to Federal Rule of Civil Procedure 12(b) as to certain Individual Defendants because the Court lacks personal jurisdiction over those defendants.

### A.     The Court Should Transfer the Iowa Action to the United States District Court for the District of Nebraska Pursuant to 28 U.S.C. § 1404(a).

The Court should transfer the Iowa Action to the United States District Court for the District of Nebraska pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A transfer analysis pursuant to section 1404(a) follows a three-factor balancing test: '(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice.'" *Wells Fargo Financial Leasing, Inc. v. NCH Healthcare System, Inc.*, 756 F.Supp.2d 1086, 1099 (S.D.Iowa 2010) (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). "In addition to the three enumerated factors in § 1404(a), the Court must conduct a case-by-case evaluation of the particular circumstances at hand and consider all relevant factors." *GreatAmerica Leasing Corp. v. Tellular Corp.*, 1999 WL 33656867, *4 (N.D.Iowa 1999) (unpublished) (citing *Terra Int'l*, 119 F.3d 688 at 691). "The analysis is flexible and discretionary." *Id.* (citing 17 James Wm. Moore et al., Moore's Federal Practice § 111.13(1)(a) (3d ed. 1999)). An analysis of the relevant factors indicates that the Iowa Action should be transferred to the United States District Court for the District of Nebraska.

### *Convenience of the Parties and Witnesses*

The United States District Court for the District of Nebraska is a more convenient forum for the parties and witnesses. "In balancing the convenience factor, the Court may consider '(1) the convenience of the parties, (2) the convenience of the witnesses-including the willingness of

witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.'" *Wells Fargo*, 756 F.Supp.2d at 1100-1101 (citing *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997)). These factors clearly indicate that Nebraska is a more convenient forum

First, Nebraska is a more convenient forum for the parties. Notably, all of the Individual Defendants for whom litigation will be the most taxing, are located in Nebraska. Plaintiff, a party with significantly more resources than the Individual Defendants is the only party in this matter that is located in Iowa that may be inconvenienced by litigation this matter in Nebraska. Plaintiff however, has an office in Nebraska and operates a portion of its business in the State of Nebraska. As such, Plaintiff has already availed itself to the jurisdiction of the Nebraska courts. *See* Exhibits C, D at ¶ 10; Exhibit E at ¶ 8; Exhibits F and G at ¶ 10; Exhibit H at ¶¶ 8-9; Exhibit I at ¶9.[2] Thus, there can be no dispute that Nebraska is a more convenient forum for the parties and this factor weighs in favor of transfer.

Nebraska is also a more convenient forum for the witnesses. The majority of the party witnesses are located in Nebraska. In addition, this action involves allegations that the Individual Defendants improperly solicited customers of HMA. (First Amended Petition). The vast majority of these customers are located in Nebraska. Specifically, Jack Struyk is broker of record for 106 clients, only 4 of which are located in Iowa. *See* Affidavit of Jack Struyk, Exhibit I at ¶12. These witnesses cannot be compelled to testify at trial. F.R.C.P. 45(b)(2)(B) (A subpoena may be served at any place "outside that district but within 100 miles of the place

---

[2] Attached hereto are Exhibit C - the Affidavit of Jane Dambrosia; Exhibit D -- the Affidavit of Deborah Louis Rasmussen; Exhibit E -- the Affidavit of Marlys R. Gorseth; Exhibit F -- the Affidavit of Cynthia Ann Carlson; Exhibit G – the Affidavit of Kathy Fridholm; Exhibit H the

specified for the deposition, hearing, trial, production, or inspection."). The lack of subpoena power is a consideration under this factor. *See Wells Fargo*, 756 F.Supp.2d at 1102. "[T]he convenience of non-party witnesses is generally considered to be one of the most important factors to be weighed in the venue transfer analysis . . ." *Id.* at 1101 (citing *Medicap Pharmacies, Inc. v. Faidley*, 416 F.Supp.2d 678, 687-88 (S.D.Iowa 2006). Thus, this factor weighs in favor of transfer.

Third, the relevant records and documents are located in Nebraska. In this matter, Plaintiff claims that the Defendants inappropriately solicited business/customers from Plaintiff. Any and all records or documents, including any communications, correspondence or agreements related to the alleged actions of the Defendants would be located in Nebraska as all actions taken by the Defendants took place in Nebraska. Further, any and all records or documents, including any communications, correspondence and agreements related to the customers of HMA's Omaha office are physically located in Omaha, Nebraska. See Affidavit of Patricia Galvin, Exhibit H at ¶ 9. Thus, this factor weighs in favor of transfer.

Fourth, Nebraska is the location where the conduct complained of occurred. All of the Individual Defendants were, and continue to be, employed in the State of Nebraska. *See* Exhibits C, D at ¶ 12; Exhibit E at ¶ 10; Exhibits F and G at ¶ 12; Exhibit H at ¶¶ 11; Exhibit I at ¶10. The vast majority of the clients who named Jack Struyk as their new broker of record are Nebraska companies dealing with a Nebraska resident with records kept at a Nebraska office. *See* Affidavit of Jack Struyk, Exhibit I at ¶¶ 9-14. Many of these Nebraska clients were with Jack Struyk prior to his employment with HMA (*see* Affidavit of Jack Struyk, Exhibit I at ¶ 9) and 97 of his present 106 clients are in Nebraska (*see* Affidavit of Jack Struyk, Exhibit I at ¶ 12)

---

Affidavit of Patricia Galvin and Exhibit I --- the Affidavit of Jack Struyk.

As noted by Judge Melloy, "transfer may be warranted because, quite frequently, a majority of the significant witnesses and physical evidence are located where the operative events occurred." *GreatAmerica*, 1999 WL at *4 (citing *Anadigics, Inc. v. Raytheon Co.*, 903 F.Supp. 615, 617 (S.D.N.Y. 1995)). That is the case in this matter. Thus, this factor weighs in favor of transfer.

Finally, Nebraska law should apply to the parties' disputes. The agreements in question in this matter all include choice of law provision providing that Iowa law should apply. However, because Nebraska has the most significant relationship to the parties and the transactions in question and the application of Iowa law would be contrary to the fundamental policy of Nebraska, Nebraska law must be applied. Generally in analyzing a choice of law provision in the context of a restrictive covenant, the law of the chosen state will apply unless the chosen state has no "substantial relationship to the parties or the transaction" and "there is no other reasonable basis for the parties' choice. *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1251 (N.D. Iowa 1995). In addition, an Iowa court will refuse to enforce a choice of law provision if it finds that application of the chosen state's law would contradict the public policy of a state that has a materially greater interest in the dispute than the chosen state. *Id*. At 1255.

Determining whether another state has a sufficiently greater interest requires the court to engage in a three-step analysis. *Id*. The court must first determine which state is the default state, meaning it must decide which state's law would govern when applying the "most significant relationship" test in Section 188 of the RESTATEMENT (Second) of CONFLICT OF LAWS. *Id*. The court then must decide "whether the default state has a materially greater interest in the outcome of a particular issue than the chosen state. *Id*. Finally, the court must determine whether applying the law of the chosen state would be contrary to the public policy of the default state. *Id*. Here, there can be no dispute that Nebraska is the default state; that Nebraska has a

materially greater interest in the outcome of this dispute and that applying Iowa law would be contrary to the public policy of the State of Nebraska. As shown above, all the Individual Defendants are residents of the State of Nebraska. Any and all actions complained of by the Plaintiff occurred in the State of Nebraska. All the Individual Defendants were employed in the State of Nebraska. None of the alleged misconduct occurred in the State of Iowa. The only relationship Iowa has to this matter is the Plaintiff's, who otherwise does business in Nebraska, is headquartered in Iowa. Thus, Nebraska has the most significant relationship to the parties and the alleged misconduct.

Likewise, Nebraska has a materially greater interest in the outcome of this dispute. The contract provisions in question in this dispute solely impact Nebraska residents and have virtually no effect on the State of Iowa. Determining whether the restrictive covenants in question unreasonably restrict Nebraska residents' ability to earn a livelihood in the State of Nebraska should be left to the Nebraska courts. The State of Iowa simply has no dog in this fight. As a result, Nebraska's material interest in this dispute is significantly greater than the State of Iowa's.

Finally, applying Iowa law to this dispute would be contrary to the public policy of Nebraska. The interests of all the parties to this agreement are in Nebraska. By conducting business in Nebraska and employing the individual defendants in the State of Nebraska, Plaintiff availed itself to the jurisdiction of the Nebraska courts. It would clearly be contrary to the public policy of Nebraska to enforce restrictive covenants against Nebraska residents only doing business in Nebraska under Iowa law. Moreover, even if this Court chosen to apply Iowa law, Iowa law will require this Court to engage in an analysis of Nebraska public interest. Iowa Courts apply a three prong test to the enforceability of any restrictive covenant. *Uncle B's*

8

*Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405, 1431 (N.D. Iowa 1996). Under that test, courts applying Iowa substantive law must ask whether the restriction is (1) reasonably necessary for the protection of the employer's business; (2) unreasonably restrictive of the employee's rights; and (3) prejudicial to the public interest. *Pro Edge v. Gue*, 374 F. Supp. 2d 711, 739 (N.D. Iowa 1995). As noted above, it is the public interest of Nebraska that will be impacted by this dispute, not the public interest of Iowa. As such, even if this Court chooses to apply Iowa law, the Court will be required to analyze the public interest of the State of Nebraska which is better suited for a Nebraska Court. Based on the foregoing, this factor weighs in favor of transfer.

Thus, taking all of the above into consideration, the convenience of the parties and witnesses indicates that the Iowa Action should be transferred to the United States District Court for the District of Nebraska.

### Interests of Justice

The United States District Court for the District of Nebraska is a more convenient forum. "Relevant, and somewhat overlapping, factors" courts consider in evaluating whether the interests of justice warrant transfer include '(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.'" *Wells Fargo*, 756 F.Supp.2d at 1103 (quoting *Terra Int'l*, 119 F.3d at 696). These factors weigh in favor of transfer.

Currently, lawsuits are pending in both Iowa and Nebraska. These lawsuits involve many of the same issues and invite the possibility of discrepancies between the Iowa and Nebraska courts. Further, because this Court lacks personal jurisdiction over some of the Individual Defendants (see section (II)(C) below), and because of Struyk's wage act claims, the Nebraska

action will undoubtedly continue.   Thus, the only avenue that will avoid duplication and potentially contradictory rulings and thus conserve judicial resources, is the transfer of the Iowa Action to Nebraska.

Further, the costs of litigating this matter in Nebraska would be lower.  The majority of witnesses and record evidence are located in Nebraska.  Moreover, a refusal to transfer would effectively mean that the parties would have to engage in two separate proceedings regarding the same fact pattern.  Continuing to litigate this matter in Iowa would lead to additional costs as the parties would be required to travel to take customer depositions and conduct other discovery. There would be no similar cost increase in litigating this matter in Nebraska.

In addition, as discussed above, Iowa courts lack subpoena power over the material witnesses in this dispute.  The inability to compel pivotal witnesses to testify at trial is an obstacle to a fair trial.  Nebraska is also a superior forum because Nebraska should make its own determinations as to local law.  Moreover, as shown above, applying Iowa law in this matter would defy the public interest of the State of Nebraska.  By conducting business in the State of Nebraska and employing the individual defendants to conduct business on its behalf in the State of Nebraska, Plaintiff has availed itself to the Nebraska law and the jurisdiction of the Nebraska courts.  Forcing Nebraska residents to litigate this matter in a foreign state to which they have virtually no connection runs afoul of Nebraska's interests of justice.

HMA may argue this its choice of forum should be honored.  Plaintiff's choice of forum, however, is only one factor to be considered.  In this case, the only connection to Iowa is the location of HMA and a permissive forum selection provision.  The Court's transfer analysis, however, is not altered by the forum selection provision found in the various Individual Defendants' Employment Agreements. The Employment Agreements provide that:

10

[i]n the event You breach any of the terms and conditions of the Restrictive Covenants contained in this section of the Agreement, We shall be entitled to institute proceedings in the Iowa District Court for Polk County, and in signing this agreement You consent to the jurisdiction of that court.

(First Amended Petition, Exs. A-G).  This forum selection provision is "permissive."

"Permissive" forum selection provisions "authorize jurisdiction in a designated forum, but do not prohibit litigation elsewhere." *Beckley v. Auto Profit Masters, L.L.C.*, 266 F.Supp.2d 1001, 1004 (S.D.Iowa 2003) (citing *K & V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002).  Permissive forum selection provisions are not dispositive under § 1404(a).  *Wells Fargo*, 756 F.Supp.2d at 1100 (S.D.Iowa 2010) (citations omitted) (granting a transfer request under § 1404(a) in a case involving a permissive forum selection clause).

"Whether a forum selection clause is mandatory or permissive is a matter of contract interpretation . . ." *Id.*  (quoting *Terra Int'l., Inc. v. Miss. Chem. Corp.*, 922 F.Supp. 1334, 1370 (N.D.Iowa 1996)).  Any ambiguity in a forum selection provision should be construed against the drafter.  *Beckley*, 266 F.Supp. at 1004 (citation omitted).  In order to be classified as mandatory, a forum selection provision must provide for "exclusive" jurisdiction. *GreatAmerica*, 1999 WL at *6 (N.D.Iowa 1999) (citing *Hunt Wesson Foods, Inc. v. Supreme Oil, Co.*, 817 F.2d 75, 77 (9th Cir. 1987)).  Terms such as "exclusive," "sole" or "only" denote a mandatory provision.  *K & V*, 314 F.3d at 500 (citation omitted).  Further, a party's consent to a particular jurisdiction does not make a forum selection provision mandatory.  *GreatAmerica*, 1999 WL at *5-6 (citing *Hunt Wesson Foods*, 817 F.2d at 77; *Orix Credit Alliance*, 816 F.Supp. 230, 233 (S.D.N.Y. 1993); *Kachal, Inc. v. Menzie*, 738 F.Supp. 371, 375 (S.D.N.Y. 1990)).

Under these criteria, the forum selection provision in the Employment Agreements in permissive.  The forum selection provision is limited to certain causes of action and also requires

an initial election by Holmes Murphy before it is triggered. Thus, the Individual Defendants were, and remain free, to file actions against HMA in other jurisdictions. There is simply nothing "exclusive" about the forum selection provision. As a result, the forum selection provision is permissive and does not modify the Court's § 1404(a) analysis.

Finally, even if this Court were to conclude that the forum selection provision was mandatory, it would still not have a dispositive affect on the Court's transfer analysis. *Id.* (citing *Red Bull Associates v. Best Western Intern., Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) ("Moreover, even if the forum selection clause was mandatory, the Court would transfer the case to Illinois. Forum selection clauses do not have a per se dispositive effect on venue. The existence of a forum selection clause cannot preclude the district court's inquiry into the public policy ramifications of transfer decisions. As the Court has noted in this opinion, those factors weigh in favor of transfer."). Thus, the Iowa Action should be transferred to Nebraska.

### B.   The Court Should Dismiss, Stay or Transfer the Iowa Action Pursuant to the First-Filed Rule.

The Court should dismiss, stay or transfer[3] the Iowa Action pursuant to the first-filed rule.[4] "The well-established rule is that in cases of concurrent jurisdiction, 'the first court in

---

[3] Under the first-filed rule, courts also have the authority to transfer a case to a different district. *The Weitz Company, LLC v. Travelers Casualty & Surety Company of America*, 2002 WL 31371969, * fn. 5 (S.D.Iowa Oct. 18, 2002) (unpublished) (citing *Monsanto Tech. LLC. v. Sygenta Crop Prot., Inc.*, 2002 WL 1760644, at *1 (E.D.Mo. July 30, 2002)

[4] Typically, a request for preliminary injunction is determined pursuant to application of the factors stated in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). *Terra International, Inc. v. Miss. Chem. Corp.*, 896 F.Supp. 1468, 1473 (N.D.Iowa 1995). "Those standards require that a preliminary injunction or TRO issue only after consideration of the following factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury granting the injunction will inflict on other parties involved in the litigation; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Id.* at fn. 8 (citation omitted). The Eighth Circuit has held, however, that the *Dataphase* factors are not applicable to "orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum." *Id.* at 1473 (citing *Northwest Airlines, Inc.*

12

which jurisdiction attaches has priority to consider the case.'" *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985)). The first-filed rule serves the important role of conserving judicial resources and avoiding conflicting rulings. *Id.* at 1006. "The prevailing standard is that 'in the absence of compelling circumstances,' the first-filed rule should apply." *Id.* at 1005 (internal citation omitted). "The 'first-filed rule' has the benefit of being a relatively firm rule that, while providing for the exceptional case, avoids in the main the need for ad hoc balancing of innumerable factors on a case-by-case basis [and therefore] is both more predictable for litigants-yielding more speedy, less expensive adjudication-and more easily applied by the courts-preserving scarce judicial resources. These are proper considerations that are consistent with the interests of justice." *Terra Int'l*, 896 F.Supp. at 1474 (citing *Berisford Capital Corp. v. Central States, Southeast & Southwest Areas Pension Fund*, 677 F.Supp. 220 (S.D.N.Y. 1988)).

In this case, the Nebraska Action preceded the Iowa Action. Thus, the Court should apply the first-filed rule and dismiss or stay the Iowa Action, or transfer the Iowa Action to the United States District Court for the District of Nebraska.

### C.   The Court Should Dismiss the Iowa Action as to Certain Individual Defendants Because it Lacks Personal Jurisdiction Over Those Defendants.

The Court lacks personal jurisdiction over certain Individual Defendants. A federal court's exercise of personal jurisdiction over a non-resident is proper only when (1) the facts presented satisfy the forum state's long-arm statute, and (2) the court's exercise of personal jurisdiction does not violate due process. *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558,

---

*v. American Airlines*, Inc., 989 F.2d 1002, 1004 (8th Cir. 1993); *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir. 1995)).

561 (8th Cir. 2003); *see also Oriental Trading Co. v. Firetti,* 236 F.2d 938, 943 (8th Cir. 2001);

*Digi-Tel Holdings v. Proteq Telecommunications,* 89 F.3d 519, 522 (8th Cir. 1996). Iowa's long-

arm statute permits the exercise of personal jurisdiction as far as is permitted under the Due

Process Clause of the Fourteenth Amendment. *Bell Paper Box, Inc. v. U.S. Kids, Inc.,* 22 F.3d

816, 818 (8th Cir. 1993); *Larsen v. Scholl,* 296 N.W.2d 785, 788 (Iowa 1980); *Roquette America,*

*Inc. v. Gerber,* 651 N.W.2d 896, 899 (Iowa Ct. App. 2002).

The Due Process Clause precludes a court from exercising personal jurisdiction where a

defendant does not have sufficient minimum contacts with the forum state such that maintenance

of the suit would offend traditional notions of fair play and substantial justice. *Helicopteros*

*Nacionales de Columbia, S.A.,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984);

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559 (1980); *International*

*Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154 (1945). The defendant's conduct and

connection with the forum must be such that he should "reasonably anticipate being haled into

court" there. *World-Wide Volkswagen,* 444 U.S. at 297; *Pecoraro v. Sky Ranch for Boys, Inc.,*

340 F.3d 558,561 (8th Cir. 2003); *Epps v. Stewart Info. Servs. Corp.,* 327 F.3d 642, 647 (8th Cir.

2003). "The Due Process Clause protects an individual's liberty interest in not being subject to

the binding judgments of a forum with which he has established no meaningful 'contacts, ties or

relations.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-72, 105 S.Ct. 217, 85 L.E.2d

528 (1985). A defendant's contacts must be more than "random, fortuitous, or attenuated,"

*Burger King,* 471 U.S. at 462, and must exist when the cause of action arose, when the suit was

filed, or within a reasonable time period immediately before the suit was filed. *Pecoraro,* No.

03-1006, 2003 WL 21954675, at 2.

The Eighth Circuit applies a five-factor test to determine personal jurisdiction: (1) the

nature and quality of the defendant's contacts with the forum state; (2) the quantity of the contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing its residents a forum; and (5) the parties' convenience. *Pecoraro,* No. 03-1006, 2003 WL 21954675, at 2; *Wessels, Arnold & Henderson v. National Medical Waste, Inc.,* 65 F.3d 1427, 1432 (8th Cir. 1995).

The first three factors are closely related and of primary importance; the last two factors are secondary. *Pecoraro,* No. 03-1006, 2003 WL 21954675, at 2; *Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co.*, 63 F.3d 694, 697 (8th Cir. 1995) *cert. denied*, 116 S.Ct. 1288 (1996), *cert. denied*, 516 U.S. 1184 (1996). The third factor, the relationship of the cause of action and the contacts, is distinguished by whether the jurisdiction is specific or general. *Wessels,* 65 F.3d at 1432 n.4; *Digi-Tel Holdings*, 89 F.3d at 523. General jurisdiction refers to a state's power to adjudicate any cause of action involving a defendant, regardless of whether the suit arose out of or was related to the defendant's contacts with the forum. *Burger King*, 471 U.S. at 473 n.15 *citing Helicopteros,* 466 U.S. at 414 n.9; *Burlington*, 97 F.3d at 1103; *Wessels,* 65 F.3d at 1432 n.4. Specific jurisdiction covers "causes of action arising from or related to the defendant's actions in the forum state," *Wessels,* 65 F.3d at 1432 n.4 *citing Helicopteros,* 466 U.S. at 414 n.8, even if those contacts are "isolated and sporadic." *Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1200 (Fed. Cir. 2003).

### The Court Lacks General Jurisdiction Over Certain Individual Defendants

The Court lacks general jurisdiction over certain individual defendants. For general personal jurisdiction over a non-resident defendant, due process requires "continuous and systematic . . . contacts" between the defendant and the forum state. *Helicopteros,* 466 U.S. at 416; *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S. Ct. 413, 96 L.Ed. 485

(1952). These contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely different from those activities." *International Shoe,* 326 U.S. at 318.

The standard for establishing general jurisdiction is "fairly high." *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986). A defendant's contacts must be of the sort that "approximate physical presence." *Bancroft 7 Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000); *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1280-81 (8th Cir. 1991).

Jane Dambrosia, Deborah Louis Rasmussen, Marlys R. Gorseth, Cynthia Ann Carlson, Kathy Fridholm, Patricia Galvin and Jack Struyk do not have the type of continuous and systematic contacts with the State of Iowa to warrant an exercise of general jurisdiction. They do not reside in Iowa, have no address in Iowa, do not send or receive mail in Iowa, do not pay Iowa taxes, have no business in Iowa and do not own or rent any property in Iowa. *See* Exhibits C, D at ¶¶ 2-9; Exhibit E at ¶¶ 2-7; Exhibits F and G at ¶¶ 2-9; Exhibit H at ¶¶ 2-7; Exhibit I at ¶¶ 2-8. Their contacts in Iowa are neither substantial nor continuous and are therefore legally insufficient to support the assertion of general jurisdiction.

### The Court Lacks Specific Jurisdiction Over Certain Individual Defendants

Specific jurisdiction over a cause of action arises from or relates to a defendant's actions within the forum state. *Sondergard v. Miles*, 985 F.2d 1389 (8th Cir. 1993) (citing *Helicopteros*, 466 U.S. at 414-16). Specific jurisdiction exists only if each defendant purposely directed his or its activities at residents of the State of Iowa, and the litigation results from injuries arising out of, or relating to, those activities. *See Burlington,* 97 F.3d at 1103; *Remick v. Manfredy*, 238 F.2d 248, 255 (3d Cir. 2001); *Institutional Food Marketing Assocs.*, 747 F.2d at 453-55. Each defendant must have contacts which proximately resulted from actions by them that created a

substantial connection with the State of Iowa; random, fortuitous, or attenuated contacts cannot meet the substantial connection standard. *See Digi-Tel*, 89 F.3d at 522; *Bell Paper*, 53 F.3d at 922. Each defendant's conduct in connection with Iowa must demonstrate that he or it reasonably anticipated being haled into an Iowa court, and purposely availed himself or itself of the privilege of conducting activities within Iowa, thus invoking the benefits and protections of its laws. *See Digi-Tel*, 89 F.3d at 522. These requirements ensure that non-resident defendants have fair warning that particular conduct may subject them to litigation within the forum state. *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 (8th Cir. 1991).

Specific jurisdiction cannot be predicated on contacts that did not give rise to the cause of action. Moreover, even if the Court finds that certain Defendants lived in Iowa in the past or at one time were licensed to do business in Iowa, those contacts were too few in number and too slight in quality to support specific jurisdiction. *See Bell v. Fischer*, 887 F.Supp. 1269, 1279 (N.D. Iowa 1995) (no specific jurisdiction even where contact closely related to cause of action), *citing Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir. 1992) (two-day trip to forum to examine plaintiff's facilities insufficient contact); *Digi-Tel*, 89 F.3d at 523 (faxes, letters and phone calls do not establish jurisdiction). The Defendants in this case have not had sufficient contacts with the State of Iowa to afford jurisdiction to this Court.

### *The Forum Selection Provision Does Not Give the Court Personal Jurisdiction Over Defendants Dambrosia, Rasmussen, Gorseth, Carlson, Fridholm or Galvin*

The forum selection provision does not give the court personal jurisdiction over of Defendants Dambrosia, Rasmussen, Gorseth, Carlson, Fridholm or Galvin. Although Courts generally enforce forum selection provisions in the employment context where the contract was executed while the employee still had a choice to enter in the employment relationship, forum selection provisions may be set aside in the employment contexts in situations of fraud, coercion

17

or overreaching by the employer.

In determining whether a forum selection provision in the employment context, should be set aside Courts focus on the following factors: (1) whether the employee assented to the forum selection provision before or after commencing work; (2) whether the employer threatened the employee with termination; (3) whether the employer presented the forum selection clause to the employee on an "as is" basis or permitted negotiations; (4) whether the employer employed strong-arm tactics; and (5) whether the employee's sophistication and experience either balanced the employer's power or reasonably permitted the employee to obtain alternative employment. *See Buckeye Check Cashing of Arizona, Inc. v. Lang*, 2007 WL 641824, at *6-7 (S.D. Ohio Feb. 23, 2007).

The Court in *Lang*, set aside a forum selection clause similar to the one at issue in this case as a result of overreaching by the employer. *Id.* Specifically, the *Lang* Court noted that the employees in question were employed by the employer in modest-paying jobs as opposed to high-level corporate positions where the applicants could be expected to have a greater degree of bargaining power or sophisticated knowledge about contract terms. *Id.* In addition, the Court noted that the employees were not given an opportunity to negotiate any terms of the agreement and significantly that they were not informed about or asked to sign the agreement until after they had resigned their previous employment and started working for the employer. *Id.*

In *Nelson v. Master Lease Corp.*, 759 F. Supp. 1397, 1402 (D. Minn. 1991) the Court struck down a forum selection clause based on the unequal bargaining power between the employee and employer and because of the inconvenience to the employee in upholding the clause.

> [T]he Court finds that the forum selection clause should not be given substantial weight because of the undue bargaining power possessed by the defendant. The

plaintiff had terminated her previous position and after starting her new position was given a boilerplate contract which contained a forum selection clause. While a boilerplate contract will obviously be sufficient under some circumstances, the equities of the contract must be carefully examined . . . . This is not a case where two parties of relatively equal bargaining power sat down and negotiated a mutually acceptable agreement. The plaintiff, based on the record before the Court, had no opportunity or ability to bargain for a different alternative.

*Id*. at 1402.

Here, like in *Nelson*, this Court should strike down the forum selection clause contained in the agreements between Defendants Dambrosia, Rasmussen, Gorseth, Carlson, Fridholm or Galvin and HMA. As set forth in their affidavits, the Employment Agreements at issue in this case are all agreements drafted exclusively by HMA, and were presented to the Defendants years after they had already begun their employment with HMA with no ability for them to negotiate the terms of the agreements. These Defendants were not employees with sophisticated knowledge of contract terms. HMA strong-armed the employees into signing the agreements by threatening termination if they refused to sign the Employment Agreements. *See* Exhibits C, D at ¶¶ 10-11; Exhibit E at ¶¶ 8-9; Exhibits F and G at ¶¶ 10-11; Exhibit H at ¶¶ 8, 10.

Moreover, absent the coercion by HMA there can be no dispute that these Defendants would not have agreed to the forum selection provision. As demonstrated above, Defendants Dambrosia, Rasmussen, Gorseth, Carlson, Fridholm and Galvin are Nebraska residents with virtually no connection to Iowa. Although employed by an Iowa employer, none of the employees conducted business in Iowa but instead were hired by HMA to specifically conduct business on behalf of HMA in its Nebraska office. The relationship between HMA and these Defendants is not that of sophisticated business entities negotiating at arms-length. Instead, it is an employer-employee relationship where HMA, as the employer, dictated the terms of the Employment Agreements.

The Employment Agreements containing the forum selection provision that is

unreasonably favorable to HMA were presented to the employees on a "take it or leave it" basis. As such, the forum selection clauses contained in the agreements between the Defendants and Holmes Murphy must be struck down. *See Jelich v. Warner Bros., Inc.,* 1996 WL 209973, at *2 (S.D.N.Y. 1996) (Striking down a forum selection clause in part because the employer instructed the employee to sign the agreement "as is" or receive no salary increase for four years). *See also, Eads v. Woodmen of the World Life Ins. Soc.,* 785 P.2d 328, 331 (Okl. App. 1989) (Striking down a forum selection clause in an employment agreement).

> In the instant case, Eads' affidavit asserts that no bargaining or negotiating occurred concerning the choice of forum provision. Furthermore, the provision is included in a form contract which Eads argues he was forced to sign in order to retain his job as a field representative. Rather than voluntary negotiation at arms length, Eads was given no meaningful choice concerning the forum selection clause which is unreasonably favorable to Defendant. Eads has shown that the forum selection clause was the result of unequal or unfair bargaining power. . . . Thus, there is no compelling reason to enforce the forum selection provision.

*Id.* Thus, the forum selection provisions do not provide the Court with personal jurisdiction over Defendants Dambrosia, Rasmussen, Gorseth, Carlson, Fridholm or Galvin.

## III.   CONCLUSION.

Defendants Jack Struyk, Lockton Companies, LLC, Kathy Fridholm, Jane Dambrosia, Cindy Carlson, Deb Rasmussen, Marlys Gorseth and Pat Galvin respectfully request that the Court transfer, stay or dismiss this action pursuant to 28 U.S.C. § 1404(a) and Federal Rules of Civil Procedure 12(b) and 65.

Respectfully submitted,


/s/ Danielle D. Smid
Danielle D. Smid, AT0002148
James H. Gilliam, AT0002882
Sean P. Moore, AT0005499
Haley R. Van Loon, AT0008814
BROWN, WINICK, GRAVES, GROSS,
BASKERVILLE & SCHOENEBAUM, PLC
666 Grand Avenue, Suite 2000
Des Moines, Iowa 50309
Telephone: (515) 242-2400
Facsimile: (515) 283-0231
Email:  smid@brownwinick.com
        gilliam@brownwinick.com
        moore@brownwinick.com
        vanloon@brownwinick.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of October, 2011, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which, pursuant to Local Rule 5.3(k)(1), will send a notice of electronic filing to the following:

Gene R. LaSuer
Sharon K. Malheiro
Davis, Brown, Koehn, Shors & Roberts, P.C.        /s/ Danielle D. Smid
The Davis Brown Tower
215 10th Street, Suite 1300
Des Moines, Iowa 50309
Email:  sharonmalheiro@davisbrownlaw.com
Email:  genelasuer@davisbrownlaw.com

21